**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 22-CR-20505-GAYLES/TORRES

UNITED STATES OF AMERICA,

v.

KEVIN ABARCA,

    *Defendant.*

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S**
**MOTION TO DISMISS COUNTS ONE, SIX, NINE TWELVE AND FIFTEEN**
**FOR LACK OF JURISDICTION**

    This cause comes before the Court upon Defendant Kevin Abarca's Motion to Dismiss Counts One, Six, Nine, Twelve, and Fifteen pursuant to Fed. R. Crim. P. 12(b)(2). [D.E. 183]. The Government responded to this motion [D.E. 203], and the Defendant replied. [D.E. 219]. Therefore, the Defendant's Motion is now ripe for disposition. The Court has reviewed the Motion, the Response, the Reply, the Superseding Indictment, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is DENIED.[1]

## I. BACKGROUND

    Among other things, Defendant was arrested for a string of robberies that he committed in 2020. In the Superseding Indictment, the Government charges Defendant with several counts, including Hobbs Act robbery in violation of 18 U.S.C.

_____

[1] On _____, the Honorable Darrin P. Gayles referred Defendant's Motion to Dismiss to the undersigned Magistrate Judge for disposition. [D.E. ___].

§ 1951, Stalking in violation of 18 U.S.C. § 2261A(2)(A), Brandishing or Discharging a Firearm in violation of 18 U.S.C. § 924(c), and Conspiracy to Use Firearms in Furtherance of Violent Crimes in violation of 18 U.S.C. § 924(o).  This Conspiracy Charge (Count One) is related to the alleged armed robberies and stalking counts set forth below.  [D.E. 125].

The Government alleges that three separate armed robberies occurred on September 1st, October 4th, and October 6th of 2020, giving rise to Counts Five, Eight, and Eleven, respectively.  [D.E. 125].  The Government also charged Defendant with three stalking counts (Counts Four, Seven, and Ten) related to each of these three above-mentioned robberies, and one separate count of stalking unrelated to these robberies (Count Fourteen).  [D.E. 125].  Moreover, the robberies and separate instance of stalking are each tied to either a charge of brandishing a firearm in furtherance of a crime of violence (Count Six) or discharging a firearm in furtherance of a crime of violence (Counts Nine, Twelve, and Fifteen).  [D.E 125].

Defendant seeks to dismiss each of these related "in furtherance of" charges, alleging that this Court lacks jurisdiction for two reasons.  [D.E. 138].  Defendant first argues that Counts One, Six, Nine, and Twelve must be dismissed because completed Hobbs Act robbery is not a crime of violence pursuant to the Supreme Court's recent decision, *United States v. Taylor,* 596 U.S. 845 (2022).  Thus, Defendant argues that completed Hobbs Act robbery cannot serve as a valid predicate offense for any of the charged § 924(o) or § 924(c)(1)(A) counts.  [D.E. 183].  Similarly, Defendant asserts that Count Fifteen must also be dismissed because 18 U.S.C. §

2261A(2)(A) cannot serve as a predicate offense under § 924(c)(1)(A)(iii) because interstate stalking is also not a crime of violence. [D.E. 183]. Therefore, Defendant argues that the Superseding Indictment fails to charge an offense against the laws of the United States, creating a jurisdictional defect and warranting dismissal of these counts. [D.E. 183]. The Government responds that each and every predicate offense charged is a crime of violence and thus the Superseding Indictment has no jurisdictional defects. [D.E. 203].

## II.   ANALYSIS

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including lack of jurisdiction. *See United States v. Kaley*, 677 F.3d 1316. 1325 (11th Cir. 2012). Specifically, under Fed. R. Crim. P. 12(b)(2), a Defendant may make "[a] motion that the court lacks jurisdiction . . . at any time while the case is pending."

While "an indictment may be dismissed where there is an infirmity of law in the prosecution," an indictment may not be dismissed where a court determines facts "that should have been determined at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Moreover, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). An indictment "is sufficient [on its face] if it charges in the language of the statue." *Id.* When making this sufficiency determination, a court must assume that the allegations are true and view the allegations in the light that is most favorable to the government. *See Torkington*, 812 F.2d at 1354. With this legal standard in mind, we

now turn to the merits of Defendant's Motion and address each of Defendant's arguments in turn.

### A. *Hobbs Act Robbery in Violation of 18 U.S.C. § 1951(a)*

Defendant's first main argument is that completed Hobbs Act robbery is not a crime of violence and therefore cannot serve as a predicate offense for any of the § 924(c) or § 924(o) charges (Counts One, Six, Nine, Twelve).  Section 1951(a) provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).  The Statute therefore criminalize the actual commission of a robbery with an interstate element, as well as the attempt and conspiracy to commit such a robbery.  The statute defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another; against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

Section 924(c), on the other hand, provides for a ten-year mandatory consecutive sentence for discharging a firearm in furtherance of a "crime of violence" and a seven-year mandatory consecutive sentence for brandishing a firearm in furtherance of a "crime of violence" and defines that term in the so-called "elements clause" as follows:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and— (A) has an element of the use, attempted use, or threatened use of physical force against the person or property of another.

18 U.S.C. § 924(c)(3)(A).

Similarly, Section 924(o) imposes a twenty-year mandatory consecutive sentence and/ or fine for "a person who conspire[s] to commit an offense under subsection (c)" and a sentence for "any terms or years of life" when the firearm used in the subsection (c) offense is a machinegun, destructive device, or is "equipped with a firearm silencer or muffler."

Based on this statutory set-up and the Supreme Court's holding in *Taylor*, Defendant first argues that Section 1951(a) is not divisible. This threshold divisibility issue effects how a court analyzes whether a predicate offense categorically qualifies as a crime of violence. *See United States v. Mathis,* 579 U.S. 500, 505 (2016). When a statute lists only a single crime, the analysis is straightforward, and courts will apply the categorical approach. *Id.* at 504. This approach requires a court to "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the relevant] generic [crime], while ignoring the particular facts of the case." *Id.*

Conversely, when looking at a single statute that is divisible, meaning the statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," a court will apply the modified categorical approach. *Id.* at 505. This modified approach allows courts to look at "a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505-06. From there,

5

the court will determine if the specifically charged crime is one that requires physical force. *See id.* at 506. This determination requires a careful analysis of whether the alternatively phrased statute lists alternative means or alternative elements because only elements may be compared during this physical force inquiry. *See id.* at 506.

The Supreme Court has explained that "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 504. On the other hand, "means are simply facts that are 'extraneous to the crime's legal requirements.'" *United States v. Harrison*, 56 F.4th 1325, 1332 (11th Cir. 2023) (quoting *Mathis*, 579 U.S. at 504). In order to determine whether a statute involves means or elements, *Mathis* directs courts to first look to the language of the statute. *See Mathis*, 579 U.S. at 518. Aside from the natural language and structure of the statute, courts should also look for any indication of different punishments or illustrative examples because while separate punishments indicate that the alternatives are elements, illustrative examples indicate that the alternatives are means. *See id.* When applicable, courts may also look to authoritative state court decisions. *See id.* at 517. One other consideration a court may take into account during this prerequisite means-elements inquiry is how model jury instructions pose the elements of the charged crime to the jury. *See id.* at 519. Ultimately, in applying either approach, "the only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 850.

Using this analytical framework, the Supreme Court in *Taylor* held that a conviction of ***attempted*** Hobbs Act robbery did not qualify as a crime of violence under Section 924(c)'s element clause.  *See Taylor*, 596 U.S. at 850-51.  As noted above, one element of completed Hobbs Act robbery is that a defendant take property "by means of actual or threatened force."  18 U.S.C. § 1951(b).  Because a completed Hobs Act robbery can be committed by threat, the government may win a conviction for attempted Hobbs Act robbery by proving that a defendant attempted to threaten someone.  Although the elements clause covers the use of force, the attempt to use force, and the threat to use force, it does not cover attempts to threaten the use of force.  Accordingly, the Supreme Court reasoned that because "[a]ttempted Hobbs Act robbery does not require proof of *any* of the elements § 924(c)(3)(A) demands," a conviction for attempted Hobbs Act robbery cannot serve as the predicate offense supporting a conviction under Section 924(c).  *Id.* at 859.

From this, Defendant makes the illogical leap that animates his motion: "because the Supreme Court in *Taylor* held that at least one of the means within this indivisible statute—attempted Hobbs act robbery—is not a 'crime of violence' under 18 U.S.C. § 924(c), then a completed robbery under § 1951(a) categorically fails to qualify as a § 924(c) 'crime of violence.'"  [D.E 183 at 4-5].  Yet the holding in *Taylor* has no bearing on whether a completed Hobbs Act robbery constitutes a "crime of violence" for the purposed of Section 924(c).

Moreover, *Taylor* makes no mention whatsoever about the divisibility of 18 U.S.C. § 1951(a).  In fact, *Taylor* seems to impliedly treat Section 1951(a) as divisible

by comparing the elements that the government is required to prove for completed Hobbs Act robbery to the elements the government is required to prove for attempted Hobbs Act robbery. *See id.* at 850-51. Further, several courts, including binding ones from this Circuit, have already explicitly found that the Section 1951(a) is divisible. *See United States v. St. Hubert*, 883 F.3d 1319, 1330 (11th Cir. 2018) ("We agree with the Sixth Circuit's conclusion that [] the Hobbs Act is a divisible statute that sets out multiple crimes . . . ."); *United States v. Gooch*, 850 F.3d 285, 291 (6th Cir. 2017) ("we conclude that § 1951(a) is a divisible statute setting out separate crimes of Hobbs Act robbery and Hobbs Act extortion."); *United States v. Smith*, 215 F. Supp. 3d. 1026, 1031 (D. Nev. 2016) ("The Hobbs Act is a divisible statute. Section 1951(a) contains disjunctive phrases that essentially create six functionally separate crimes: interference with commerce by robbery . . . attempt to interfere with commerce by robbery . . . .").

Thus, because *Taylor* does not support either of Defendant's arguments about completed Hobbs Act robbery, we cannot reach the implied conclusion that clearly runs against the consistent finding post-*Taylor* of federal courts across the country that a completed Hobbs Act robbery is indeed a crime of violence. *See, e.g.*, *United States v. Worthen*, 60 F.4th 1066, 1069 (7th Cir. 2023) (rejecting same argument made by Defendant here, and "reiterat[ing] that the principle offense of Hobbs Act robbery qualifies as a crime of violence within the meaning of § 924(c)"); *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023) ("we see nothing in Taylor's language or reasoning that undermines this Court's settled understanding that completed Hobbs

Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)."); *United States v. Green*, No. 16-7168, 2023 WL 3470910, at \*8 (4th Cir. May 16, 2023) (same); *United States v, Baker*, 49 F.4th 1348, 1360 (10th Cir. 2022) ("*Taylor* left no room for reasonable debate that the crime-of-violence status of the completed offense of Hobbs Act robbery was not of analytical concern there; indeed, the Court expressly acknowledged that the issue was not before it.") (citing *Taylor*, 142 S. Ct. at 2024); *United States v. St. Hubert*, 909 F.3d 335, 349, 349 n.11 (11th Cir. 2018) (holding that Section 1951(a) "is a divisible statute that sets out multiple crimes," and noting that "[six] circuits have applied the categorical approach . . . and concluded that Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A)"); *In re Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016) ("Saint Fleur pled guilty to using [] a firearm during the Hobbs Act robbery [], which robbery offense meets the use-of-force clause of the definition of a crime of violence [in] § 924(c)(3)(A). This means Saint Fleur's sentence would be valid even if [] § 924(c)(3)(B)['s] residual clause [is] unconstitutional.").

In the face of this persuasive authority and despite acknowledging that Defendant was charged with completed Hobbs Act robbery, Defendant's motion improperly attributes to *Taylor* overarching implications that purportedly undo settled Eleventh Circuit precedent on the violent character of a completed Hobbs Act robbery.  As noted above, however, *Taylor* does not support this interpretation, nor do the multiple courts that have rejected this same argument in the wake of *Taylor*. *See e.g., Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) ("[completed]

Hobbs Act robbery, [is] a crime we have previously held constitutes a crime of violence under the elements clause."); *St. Hubert*, 909 F.3d at 345 ("this Court has already held that Hobbs Act robbery . . . independently qualifies as a crime of violence under § 924(c)(3)"); *see also United States v. Linehan*, 56 F.4th 693, 700 (9th Cir. 2022) (in holding that the offense of Hobbs Act robbery was not a crime of violence, the Court did not suggest that completed Hobbs Act robbery must be treated identically, . . . [a]nd it is well established both pre- and post-Taylor that completed Hobbs Act robbery is a crime of violence under the elements clause."); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1349 (11th Cir. 2022) (Newsome, J., concurring) (observing that "the Court dutifully applies a version of the so-called 'categorical approach,'" concluded "that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)"); *United States v. Moore*, No. 22-1899, 2022 WL 4361998, at *1 (8th Cir. Sept. 21, 2022) (rejecting appeal because "[t]hough the Supreme Court recently held that attempted Hobbs Act robbery is not a crime of violence . . . the plea agreement established that Moore pleaded guilty to completed Hobbs Act robbery, which is a crime of violence."); *United States v. Feliciano-Estremera*, No. CR 22-182 (PGS), 2022 WL 4357235, at *3 (D.N.J. Sept. 20. 2022) ("Taylor does not change the status of the law that a competed Hobbs Act robbery is [a] crime of violence with the requisite proof of force, thereby meeting the element prong of § 924(c)(3)(A) using the categorical approach.").

In fact, the Government rightly points out that this Court addressed the same exact argument in *United States v. Alvin,* Case No. 22-cr-20244, D.E. 105 (S.D. Fla.

May 22, 2023) (rejecting defendant's argument that the Supreme Court's decision in *Taylor* made completed Hobbs Act an invalid § 924(c) predicate offense).

Even more recently, the Eleventh Circuit itself has had the occasion to address the exact same post-*Taylor* completed Hobbs Act robbery argument that Defendant makes here and has held that *Taylor* has no bearing on this Circuit's binding precedent that found completed Hobbs Act robbery to be a crime of violence.  *See United States v. Rhodes*, No. 23-10989, 2024 WL 1005420, at *5 (11th Cir. Mar. 8, 2024) ("We are bound by the prior precedent rule to apply *Wiley*; as such, Rhodes's argument is foreclosed by our precedent. Therefore, the district court did not err when it found that completed Hobbs Act robbery is a crime of violence.") (citing *United States v. Wiley*, 78 F.4th 1355, 1364 (11th Cir. 2023) ("the Supreme Court's analysis in *Taylor* was limited to attempted Hobbs Act robbery."; holding that aiding and abetting in robbery still a crime of violence) ("because *Taylor* did not disturb our holding that completed Hobbs Act robbery is a crime of violence, aiding and abetting a completed Hobbs Act robbery also qualifies as a crime of violence under § 924(c)(3)(A).").

With this substantive backdrop of district and circuit court precedent establishing that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3), both pre- and post-*Taylor*, we cannot agree with Defendant's arguments that charging a violation of § 924(c) predicated upon Hobbs Act robbery is jurisdictionally defective.  Although Defendant urges this Court to read *Taylor* as dispositive on these issues, we think this interpretation erroneously departs from the

substantive line of district and circuit court rulings that have rejected that idea pre- and post-*Taylor*. *See United States v. Hardy*, No. 21-13701, 2022 WL 16753857, at *1 n.1 (11th Cir. Nov. 8, 2022) ("[W]e remain bound by our precedent, which holds that Hobbs Act robbery constitutes a crime of violence for purposes of § 924(c).") (citation omitted); *see also supra* at 31-32.

Therefore, because *Taylor* does not disturb the propositions that Section 1951(a) is divisible and that completed Hobbs Act robbery is a crime of violence for the reasons discussed above, completed Hobbs Act robbery serves as a valid predicate offense under Section 924(c) and Section 924(o). As such, Defendant's Motion to Dismiss Counts One, Six, Nine, and Twelve are DENIED.

### B. *Stalking in Violation of 18 U.S.C. § 2261A(2)(A)*

In a similar vein, Defendant also argues that Count Fifteen should be dismissed because 18 U.S.C. § 2261A is neither divisible, nor crime of violence. Therefore, the Defendant argues that 18 U.S.C. § 2261A cannot serve as a predicate offense for Count Fifteen's charge of a violation of discharging a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A). Section 2261A(2)(A) provides:

> Whoever—(2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that- (A) places that person in reasonable fear of death of or serious bodily injury to a person, pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A).

18 U.S.C. § 2261A(2)(A).

Subsection 1(A) further expands the people or animals that may be placed in a reasonable fear of death or serious bodily harm under Section 2261A(2)(A).   This subsection includes:

     (i)     that person;
     (ii)    an immediate family member (as defined in section 115) of that person;
     (iii)   a spouse or intimate partner of that person; or
     (iv)   the pet, service animal, emotional support animal, or horse of that person.

18 U.S.C. § 2261A(1)(A).

### 1.  Section 2261A is Divisible

Again, in order to address Defendant's arguments, we must first determine if the statute is divisible before we can answer the question of whether the offense is a crime of violence.   Defendant's only argument against divisibility arises in his reply to the Government's response.   There, Defendant claims that the statute is indivisible because it provides for "alternative means of committing the stalking offense by using the mail or interactive computer."   [D.E. 219 p 2, n.1].   By making this conclusory argument, Defendant has misunderstood the inquiry at hand.

Simply wording a statute in a disjunctive is not dispositive of the divisibility determination.   *See Gundy*, 842 F.3d 1156, 1162 (11th Cir. 2016) ("a [] statute may use terms like 'or' that can signal either (1) the listing of alternative elements, thus creating multiple crimes, or (2) the listing of alternative means of committing a single offense with an indivisible set of elements.") (citing *Mathis*, 579 U.S. at 506).   Here, it is true that a defendant may be convicted of stalking in violation of 18 U.S.C. §

2261A(2)(A) if he uses the mail or computer service; however, the inquiry at issue is whether Section 2261A(2)(A) is a crime that is divisible from that of the rest of Section 2261A.  Based on that question, we find that the face of the statute answers the divisibility question in the affirmative.

The language of the Section 2261A(2) clearly sets out two distinct crimes under subsection (A) and (B), which are both distinct from the crime set out under Section 2261A(1).  Section 2261A(1), for example, "requires travel in interstate or foreign commerce, presence within the special maritime and territorial jurisdiction of the United States, or entry into or exit from Indian country," all of which Section 2261A(2)(A) does not require.  *See United States v. Bacon*, No. 18-75-LPS, 2021 WL 5051364, at *12 (D. Del. Nov. 1, 2021).  Similarly, Section 2261A(2)(A) requires a distinct element from that of Subsection 2(B)—that reasonable fear of death or serious bodily injury result from the defendant's course of conduct, rather than substantial emotional distress, which is criminalized under Subsection 2(B).  In other words, Section 2261A(2)(A) has four elements, not means, that the government must prove beyond a reasonable doubt: (1) the identity of the defendant, (2) the requisite intent, (3) the use of an interstate system, and (4) the course of conduct that puts a qualifying person or animal in a reasonable fear of death or serious bodily harm.  *See* 18 U.S.C. § 2261A(2)(A).  With the issue of divisibility answered, we next turn to whether Section 2261A(2)(A) is a crime of violence.

### 2. *Section 2261A(2)(A) is a Crime of Violence*

Because we have determined that this Statute is divisible, we will apply the modified categorical approach in the analysis of whether Section 2261A(2)(A) is a crime of violence.  As noted above, this approach allows a court to look to a limited class of documents, like the Superseding Indictment here, when determining if the specifically charged crime requires the use of force, the attempted use of force, or the threatened use of force.  After analyzing this particular document, it is clear that Defendant is being charged under Section 2261A(2)(A).  Therefore, we next address whether this specific section of the Statute is a crime of violence to support Count Fifteen's charge of discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The Government initially argues that Section 2261A(2)(A) is a crime of violence because physical force only needs to be "nominal," according to the Government's reading of *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), while Defendant argues that *Johnson v. United States*, 130 U.S. 133, 140 (2010), limits the definition of physical force to only "violent force."  In this instance, the Government's reliance on *Stokeling* is misplaced and takes the Court's reference to the word "nominal" out of context.  The Court did not use the word "nominal" to set a new standard of when physical force meant.  Rather, the Court mentions "nominal contact" to refer to the physical force *Johnson* contemplated, which the Court found insufficient under the physical force definition the Court articulated in *Johnson*.  *Stokeling*, 139 S. Ct. at 553. The Court goes on to contrast the insufficient physical force at issue in *Johnson*

with the force at issue in the case before it.  *Id.*  Further, the Court in *Stokeling* ultimately holds that the force necessary to convict a defendant under Florida's robbery meets *Johnson's* physical force definition because "the term 'physical force' in ACCA encompasses the degree of force necessary to commit common-law robbery, and because Florida robbery requires the same degree of 'force,' Florida robbery qualifies as an ACCA-predicate offense under the elements clause." *Id.* at 555.

It is worth noting that both parties rely on Supreme Court cases that interpret physical force for convictions under the Armed Career Criminal Act (ACCA), specifically 18 U.S.C. § 922(g), and juxtapose that understanding with how this Act defines "violent felony" under Section 924(e)(2)(B).  While the Supreme Court has not explicitly defined physical force in relation to Section 924(c)(3)(A), the Eleventh Circuit consistently follows a definition of physical force that comports with *Johnson's* definition even in the context of Section 924(c)(3).  *See Charlton v. United States*, 725 F. App'x 881, 887 (11th Cir. 2018) ("The first part of the 'crime of violence' definition is often referred to as the 'use-of-force' clause . . . . The phrase 'physical force' requires 'violent force' or 'force capable of causing physical pain or injury to another person.'") (citing *Johnson*, 559 U.S. at 140); *Alvarado-Linares*, 44 F.4th at 1343 (determining that defendant's conviction was a crime of violence under Section 924(c)(3)(A) by using a definition of physical force that was "'simply force exerted by and through concrete bodies, as opposed to intellectual force or emotional force.'") (citing *United States v. Castleman*, 572 U.S. 157, 170-171 (2014)) (internal citations omitted)); *United States v. Douglas*, No. 22-12659, 2024 WL 939713, at *2 (11th Cir. Mar. 5,

2024) (commenting that because Section 924(c)(3)(A) has a definition of crime of violence that is "nearly identical to the definition of 'violent felony' in the Armed Career Criminal Act," the definition the Court would use would be *Johnson's* definition of "'violent force—that is, force capable of causing physical pain or injury to another person.'") (citing *Johnson*, 559 U.S. at 140).

Therefore, we agree with Defendant's characterization of physical force, which is how the Supreme Court defined the term in *Johnson*. Ultimately, however, that is a hollow victory for Defendant here. Even though he is correct in this regard, Defendant's overall argument, that Section 2261A(2)(A) is not a crime of violence, is ultimately unpersuasive.

Defendant offers two hypotheticals where the government might successfully secure a conviction under 2261A(2)(A) without having to prove beyond a reasonable doubt that a defendant used physical force, attempted to use physical force, or threatened physical force. Before addressing these hypotheticals on their merits, this Court must address the broader legal landscape in which this Court is analyzing these hypotheticals.

As established above, a few different statues, such as ACCA, Immigration and Nationality Act (INA), and Section 924(c)(3), use virtually identical physical force definitions to supply meaning to their respective statutory terms and employ categorical approaches when addressing their respective inquires. Yet, no Supreme Court case or Eleventh Circuit case specifically addresses the categorical analysis of Section 924(c)(3)(A)'s "crime of violence" definition in relation to Section 2261A(2)(A).

In these similar statutory contexts, however, the Eleventh Circuit requires that we follow the Supreme Court's adoption of the "realistic probability" doctrine, which prohibits the application of far-fetched hypotheticals. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (commenting that when employing the categorical approach under the INA the court's "focus on the minimum conduct criminalized by the [] statute is not an invitation to apply 'legal imagination' to the []offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  The Eleventh Circuit, when applying this doctrine, has cast doubt on a defendant's creative hypotheticals about how a defendant could violate a crime of violence without actually engaging in some physical act designed to cause harm. *See, e.g.,  United States v. Vail-Bailon*, 868 F.3d 1293, 1305 (11th Cir. 2017) ("In short, Vail-Bailon's *florid exercise of legal imagination* does not provide a persuasive basis upon which to conclude that Florida felony battery lacks the requirement of physical force necessary [to meet the violent force standard].") (emphasis added); *see also United States v. Deshazior*, 882 F.3d 1352, 1357 (11th Cir. 2018) (noting that the defendant had "heed[ed] [their] warning" about not proffering unrealistic, theoretical hypotheticals to assert that Florida's sexual battery with the a deadly weapon statute could be accomplished without the requisite physical force, attempted use of physical force, or threatened use of physical force).

Given the persuasive authority in contexts that the Eleventh Circuit has found to be analogous to Section 924(c)(3), we believe the realistic probability doctrine applies with equal force in Section 924(c)(3)'s crime of violence inquiry. Based on this understanding of how a court should assess whether a predicate offense is a crime of violence and for the reasons set forth below, we are unpersuaded that Defendant's hypotheticals successfully demonstrate that a conviction under Section 2261A(2)(A) could be charged without proving the use of physical force, the attempted use of physical force, or the threatened use of physical force.

Specifically, Defendant sets forth three different hypotheticals: (1) that Section 2261A(2)(A) can be successfully charged where someone threatens to poison another via electronic communication, (2) that Section 2261A(2)(A) can be successfully charged where someone threatens to set fire to someone's home via electronic communication by manipulating the gas line or electrical system, and (3) that Section 2261A(2)(A) can be successfully charged where someone threatens to deprive a person of "much needed medical attention." [D.E. 183]. Whether or not these hypotheticals are considered "legal imagination" under the realistic probability doctrine is a close call; but, even if we address these hypotheticals on their merits, Defendant's hypotheticals still falter.

To begin with, the use of poison or arson by means of electronic communications are still violent felonies contrary to Defendant's underlying premise. To illustrate, in *United States v. Deshazior*, the Eleventh Circuit addressed similar indirect physical force hypotheticals proffered by a defendant, who used similar

hypotheticals to argue that his Florida's sexual battery with the a deadly weapon conviction was not a violent felony under ACCA. *See Deshazior*, 882 F.3d at 1357. There, the defendant argued that sloshing bleach in a victim's face, poisoning a victim, using a chemical weapon, or commanding a dog to "'sic'" could all satisfy the statute at issue without "involv[ing] the use of 'violent force—that is, force, capable of causing physical pain or injury to another.'" *Id.* (quoting *Johnson*, 559 U.S. at 140). But the Eleventh Circuit found these hypotheticals to be unpersuasive because even indirect physical force or the indirect application of physical force can be sufficient physical force under *Johnson*. *Id.* ("whether the use of force 'occurs indirectly, rather than directly (as with a kick or a punch), does not matter.'") (quoting *United States v. Castleman*, 572 U.S. at 171); *see also United States v. Gandy*, 917 F.3d 1333, 1343 (11th Cir. 2019) (same). Therefore, the Eleventh Circuit held that all the hypotheticals proffered by the defendant "constitute[d] 'physical force'" under ACCA because in all of these examples "the actor knowingly employs a device to indirectly cause physical harm—from a bullet, a dog bite, or a chemical reaction." *Id.* at 1357-58.

In applying that same rationale to the hypotheticals that Defendant poses here, we find that Defendant's hypothetical threat scenarios fit within the kind of indirect physical harm scenarios analyzed in *Deshazior*. The first hypothetical, which involved making a threat to poison someone, is almost the exact same poisoning hypothetical that was foreclosed in *Deshazior* and is therefore easily discounted. As to the second hypothetical that the Defendant proposes, it involves the use of indirect

physical force in the same way that "pulling the trigger of a gun does" because the defendant would be "triggering" the violent physical force—in this case the force that sets the fire. *Id.* at 1358. As Defendant concedes, "this threat would certainly place a person in reasonable fear of death or serious bodily injury," [D.E. 183], and is again easily overcome. The last hypothetical, which involves threatening to deprive a person of much needed medical care, is the least realistic probability of Defendant's hypotheticals. That scenario cannot reasonably be applied given how fanciful it would be to stalk someone in interstate commerce with the intent to threaten their loss of necessary care. But even in such an imaginary world, in this circumstnace the defendant would still be knowingly employing a device that caused the "physical pain or injury" to another. Thus, these imagined situations do indeed reflect the kind of physical force necessary to serve as a valid predicate under Section 924(c)(1)(A)(ii).

Without engaging in legal imagination, this Court also attempted to identify what the least culpable conduct criminalized under Section 2261A(2)(A) would be. Even in this instance, the Court could not come up with a realistic hypothetical where the government could likely secure a lawful conviction under Section 2261(b)(2)(A) *without* having to prove—beyond a reasonable doubt, as an element of the crime— that a defendant used physical force, attempted to use physical force, or threatened to use physical force. Even in a hypothetical circumstance where someone engaged in stalking to coerce a victim to act against her will to prevent a close family member from committing suicide by the most non-violent means possible, that verbal conduct would still indirectly procure physical harm to the victim. So, based on the same

application of *Deshazior* and *Gandy*, this indirect application of coercion would still qualify as a crime of violence because the perpetrator would be knowingly employing a device to indirectly cause the victim emotional injury as well as a reasonable fear of serious bodily injury or death to her family member.

Therefore, because 18 U.S.C. § 2261A(2) is divisible and Section 2261A(2)(A) is a crime of violence, Section 2261(A)(2)(A) is a valid predicate offense for Count Fifteen's charge of discharging a firearm in furtherance of a crime of violence under Section 924(c)(1)(A)(ii).

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** as to all counts.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to expedite any objections to this Report and Recommendation. Accordingly the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of March, 2024.

/s/    Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge